IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-24335-UNGARO



In Re: Application of MESA POWER GROUP, LLC,
Pursuant to 28 U.S.C. § 1782 for judicial assistance
in obtaining evidence from NEXTERA ENERGY
RESOURCES, LLC; ARMANDO PIMENTEL, JR.;
MITCHELL F. DAVIDSON; MICHAEL O'SULLIVAN;
MARK R. SORENSEN; T.J. TUSCAI; LOUIS COAKLEY;
and ROSS GROFFMAN for use in a Foreign and
International Proceeding.

Sealed

_____/

## NEXTERA ENERGY RESOURCE'S MOTION TO QUASH SUBPOENA DUCES TECUM AND DEPOSITION SUBPEONAS AND SUPPORTING MEMORANDUM OF LAW

NextEra Energy Resources, LLC ("NextEra") files this Motion to Quash Applicant Mesa Power Group LLC ("Mesa Power") subpoena duces tecum seeking documents containing proprietary confidential information related to its methods of doing business, and the deposition subpoenas directed to seven of its present and former employees: Armando Pimentel, Jr.; Mitchell F. Davidson; Michael O'Sullivan; Mark R. Sorensen; T.J. Tuscai; Louis Cokley; and Ross Groffman.[1]

1. NextEra, which is not a party to the underlying foreign proceeding, is in the business of producing electricity from a variety of energy sources, including wind. NextEra is the largest owner-operator of wind-energy projects in North America. (See Declaration of F. Allen Wiley at ¶¶ 2, 3 (Exhibit A)).

2. On or about March 7, 2012 Applicant served a subpoena duces tecum on NextEra,

---

[1] NextEra brings this Motion on behalf of itself and the named individuals who are employees of NextEra: Armando Pimentel, Jr.; Michael O'Sullivan; Mark R. Sorensen; T.J. Tuscai; Louis Cokley; and Ross Groffman; and Mitchell F. Davidson, the former CEO of NextEra.

seeking highly confidential competitive information relating to NextEra's Canadian wind projects, including strategy and technical information developed at significant cost to NextEra.

3. This Court had previously granted Mesa Power's sealed *ex parte* Application for discovery on December 6, 2011. The Application purports to seek discovery from NextEra relating to claims pending in NAFTA arbitration. Therein, Mesa Power in that arbitration essentially claims that it suffered damages as a result of the Canadian government failing to award contracts to Mesa Power through its Feed-in-Tariff Program ("FIT").

4. Applicant subsequently caused the issuance of a subpoena on March 6, 2012. The subpoena was served on NextEra on March 7th.[2]

5. The subpoena seeks highly confidential, proprietary information regarding NextEra's development of projects for wind power facilities in Ontario, Canada. This confidential information consists of NextEra's method and/or process of developing wind power projects that result in independent economic value to NextEra. (Wiley Decl. at ¶ 28). Responsive documents would reveal NextEra's entire strategy in developing proposals submitted to the Ontarian Government, defendant in the underlying foreign arbitration. The information sought in the subpoena is not known to, and is not readily ascertainable by, other persons who can obtain economic value from its disclosure or use. (Wiley Decl. at ¶ 31).

6. In particular, wind study analyses are produced by NextEra at significant cost using internal skills and techniques. The availability of these wind studies to a competitor would greatly disadvantage NextEra in its acquisitions of wind resource properties for its wind power business.

7. Applicant Mesa Power is in the wind business and is a competitor of NextEra.

---

[2] Pursuant to this Court's Order, the return of documents was due by March 21, 2012; however the parties have stipulated to extend the time to respond until April 6, 2012. NextEra has timely served objections to the request for production of documents pursuant to Rule 45. In addition, NextEra seeks to quash all aspects of the subpoena and deposition subpoenae.

(see Ex. A to *Ex Parte* Application (D.E. 1) Notice of Intent ¶¶ 2-4 & 18), though a relative newcomer to the wind-energy industry. *See* http://mesapowergroup.com/ (noting company began in 2007); (Wiley Decl. at ¶ 4). Mesa Power has significantly less experience and expertise than NextEra in the wind energy industry, and the availability of the information requested in the subpoena would give Mesa Power an unfair advantage in its business dealings with NextEra. (Wiley Decl. at ¶¶ 4, 28-32).

8. Pursuant to the Court's Order, seven employees of NextEra are compelled to sit for deposition within thirty (30) days of the date of return of documents. Certain of these seven deponents (Armando Pimentel, Jr.; Mitchell F. Davidson; Michael O'Sullivan; Mark R. Sorensen; T.J. Tuscai; Louis Cokley; and Ross Groffman) are high-ranking executives of NextEra with no personal knowledge of the topics set forth in the subpoena.[3] If compelled to testify, those with personal knowledge would reveal to Mesa Power, a competitor, confidential competitive information to the detriment of NextEra.

## ARGUMENT

I.  The Discovery Sought is Contrary to the *Intel* Discretionary Factors.

Section 1782 "authorizes, but does not require, a federal district court to provide assistance to a complainant..." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). An Applicant for assistance under Section 1782 must demonstrate that the request is being made by an interested person "for use in a proceeding in a foreign or international tribunal," from a person residing or found in the district of the court ruling on the application. 28 USC § 1782.

Whether the Court should, in its discretion, order production of discovery pursuant to Section 1782 requires consideration of the four additional factors set forth in *Intel*:

---

[3] The subpoenae directed to the seven individuals are all identical.

3

> (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, because the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country of the United States; and (4) whether the request is otherwise unduly intrusive or burdensome.

*Kang v. Noro-Moseley Partners*, 246 Fed. Appx. 662, 663 (11th Cir. 2007) (quoting *Intel*, 542 U.S. at 264-65).

The second and third *Intel* factors strongly support NextEra's Motion to Quash. In the absence of "authoritative proof" that the NAFTA arbitration would be receptive to the discovery sought, the Court cannot assess whether the instant discovery request is appropriate or whether it is "an attempt to circumvent proof-gathering mechanisms which may well be available in the Treaty Arbitration." *In re Application of Chevron Corp.*, 762 F. Supp. 2d 242, 252 (D. Mass. 2010) (exercising discretion in denying application for Section 1782 assistance). The underlying arbitration has not proceeded into discovery at this time. Nor could Mesa Power seek third party discovery even once discovery is commenced in the arbitration; UNCITRAL rules, which govern the NAFTA arbitration, permit the arbitral panel to compel documents only from the parties. UNCITRAL Arb. Rules, Art. 27 (3) (revised 2010). Mesa Power can make no showing that the arbitral panel would be receptive to evidence collected from NextEra.

Moreover, to the extent that responsive documents exist, Mesa Power will be able to obtain them from the counter-party to the arbitration, the Canadian Government. Indeed, NextEra has already been notified by the Canadian Government of a FOI request for documents

relating to NextEra. (Wiley Decl. at ¶ 27). If Mesa Power is not the party that initiated this request, it certainly could avail itself of such measures rather than demand the production from NextEra, a third party to the dispute.

Most significantly, the fourth factor weighs heavily against Mesa Power's Application, as the requests are both intrusive and burdensome. In its Petition, Mesa Power avers that discovery from NextEra would assist Mesa Power in the prosecution of its claims pending in NAFTA arbitration. Mesa Power asserts that it was unfairly surprised by rule changes made by the Ontarian Government in relation to the Feed in Tariff Program (FIT) and implies that NextEra influenced the decision to implement such changes. This is both a distortion of what occurred and attempt to justify discovery requests for confidential information, as the facts surrounding the claimed events are well-known to Mesa Power. An explanation of the events leading up to the award of contracts demonstrates the weakness of Mesa Power's claims and its purported need for the intrusive discovery from NextEra.

The "rule change" announced in June 2011 about which Mesa Power complains was neither a surprise nor a change in rules. In May 2010, OPA provided a presentation to participants regarding the contracts awarded to date and the amount of transmission projected to be available in each of the seven Transmission Areas after the initial round of FIT awards. The OPA outlined its transmission evaluation process and noted that it intended to open a window in July 2010 to enable parties to change their points of interconnection. (See Wiley Decl. at ¶ 10, Exh. 3 at pp. 39, 46, 48). The window to change points of interconnection did not open in July 2010 as proposed by the OPA. (Wiley Decl. at ¶ 10).

In December 2010, the OPA released its updated rankings for projects remaining in the queue. In the case of the Bruce, Northeast, Northwest and West of London Transmission Areas, the OPA noted that there was no additional transmission capacity available for projects to

interconnect into. The OPA also noted that approximately 1,200 megawatts and 300 megawatts of additional transmission capacity would be made available in the Bruce and West of London Transmission Areas, respectively, by Hydro One's proposed Bruce to Milton transmission line. (See Wiley Decl. at ¶ 11, Exh. 4). The December 2010 Program Update noted throughout that "FIT applicants will have the opportunity to request a change of connection point prior to the ECT. Connection point changes could impact the ECT outcome for other applicants requesting a nearby connection point." (See Exh. 4 to Wiley Decl., note 3 on pp. 3-8).

On February 24, 2011, the Province announced that 40 projects totaling 2,421 megawatts were offered FIT contracts. (See Exh. 5 to Wiley Decl.) All of the projects that were offered contracts were interconnected to the Central, East or Niagara Transmission Areas. No projects in the Bruce, Northeast, Northwest and West of London Transmission Areas received contract offers during this period. Likewise, none of NextEra's six projects remaining in the queue received FIT contracts during this round of awards. (Wiley Decl. at ¶ 12).

On May 27, 2011, The Canadian Wind Energy Association ("CANWEA"), non-profit trade association, delivered a letter to the Ontario Ministry of Energy encouraging the OPA to follow through on established processes by immediately opening the window to allow bidders to change points of interconnectivity in their submitted applications. (Wiley Decl. at ¶ 22). Mesa Power is a member of CANWEA. (Wiley Decl. at ¶ 23).

On June 3, 2011, the OPA announced that it would be offering FIT contracts for projects enabled by the Bruce to Milton transmission line. (Wiley Decl. at ¶ 13). The OPA noted that it would award up to 750 megawatts of contracts interconnected to the Bruce Transmission Area and 300 megawatts for projects interconnected to the West of London Transmission Area. The OPA also announced that it would provide five business days for proponents within the Bruce and West of London Transmission Areas to change their interconnection points. (See Exh. 6 to

Wiley Decl.) Despite Mesa Power's suggestion that the process was shrouded in secrecy and that NextEra possesses information unknown to Mesa Power about the process, OPA in fact hosted a webinar and presentation to answer questions from participants regarding the assessment process. (Wiley Decl. at ¶14-15; Exhs. 7 and 8).

OPA announced award of the contracts on July 4, 2011. (Wiley Decl. at ¶ 16). NextEra was very successful in its bids. Mesa Power was not. Mesa Power had contacted NextEra during the open window period and suggested that the entities coordinate their efforts to determine optimum points of interconnection for each entity. NextEra declined to do so. (Wiley Decl. at ¶¶ 24-25). Mesa Power's subpoena for documents and testimony is an attempt to benefit from the competitive expertise they sought from NextEra and which NextEra justifiably refused to share.

The requests are also exceedingly broad and burdensome on NextEra. The subpoenae at issue do not request specifically identified documents containing generally-known information. *Compare In re Application of Winning (HK) Shipping Co. Ltd.*, No. 09-22659-MC, 2010 WL 1796579 (S.D. Fla. Apr. 30, 2010 (granting application for "narrowly tailored" discovery and noting that responding party did not assert that requests were unduly intrusive or burdensome); *and Servicio Pan Americano De Proteccion, C.A.*, 354 F. Supp. 2d. 269, 257 (S.D.N.Y. 2004)(granting application seeking documents "related to insurance coverage for a single loss on a single day" where the responding party "did not argue that compliance with the request would be overly burdensome or would breach the company's privacy or confidentiality"). As more fully set forth below, the requests seek documents containing confidential and competitive information.

II. <u>The Discovery Sought Imposes an Undue Burden on NextEra and Seeks Trade Secrets and Competitive Information</u>.

Under Federal Rule of Civil Procedure 45 the Court may quash a subpoena if it requires "disclosing a trade secret or other confidential research, development, <u>or commercial information</u>." Fed. R. Civ. Pro. 45(c)(3)(B)(i) (emphasis added).

The competitive risk to NextEra is not avoided by the entry of a protective order governing the disclosure of such information. Federal courts have recognized that "[t]here is a constant danger inherent in disclosure of confidential information pursuant to a protective order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought." *Insulate America v. Masco Corp.*, 227 F.R.D. 427, 434 (W.D.N.C. 2005) (*citing Litton Industries, Inc. v. O.R. Co.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990)); *Wi Lan, Inc. v. Research in Motion Corp., et al.*, 2010 WL 2998830 at *3 ("Where discovery is sought from a non-party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of the production on the nonparty."); *In re Natural Gas Commodity Litigation*, 235 F.R.D. 199, 208 (S.D.N.Y. 2005). In *Insulate America, supra* at 433, the Court also recognized that "[c]ourts have concluded that disclosure to a competitor is more harmful than disclosure to a non-competitor," *citing, Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288 (D. Del.1985). The risk to NextEra is compounded in the present case, as the requested discovery is intended for use in extraterritorial proceedings. In the event of improper disclosure of NextEra's confidential information, NextEra may have no recourse.

The subpoena seeks production of confidential commercial information, consisting of internal documents concerning the development of wind-energy projects, which provides significant economic value to NextEra. The information sought in the subpoena is not known to, and is not readily ascertainable by, other persons who can obtain economic value from its

8

disclosure or use. (Wiley Decl. at ¶ 31). NextEra has used its best efforts to maintain the secrecy of the information sought in the subpoena. (Wiley Decl. at ¶ 31). This information, therefore, provides NextEra with a competitive advantage in the industry. (Wiley Decl. at ¶ 32).

Moreover, the burden of compliance on NextEra is substantial. First, the subpoena seeks documents dating back to January 1, 2009 to the present. The Act creating the FIT program underlying Mesa Power's Notice of Intent was not even enacted until September of 2009; the event about which Mesa Power complains did not occur until June of 2011. (Wiley Decl. at ¶ 13). Moreover, while the subpoena is directed to NextEra, only its subsidiary NextEra Energy Canada ULC participated in the FIT program. Moreover, the Requests are extremely broad. Mesa Power's Requests seek, for example, documents "created by" NextEra relating to unrelated projects (Request No. 2); relating to lobbyists in the Province of Ontario (Request No. 4); all documents related to Program Updates issues by the Ontario Power Authority in 2010 (Request No. 7); and relating to News Releases by the Ontario Power Authority (Request No. 9). The Requests do not clearly identify the documents sought, and compound the burden on NextEra in identifying responsive documents.

The Court must weigh the "relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information." *Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003)(granting motion to quash subpoena seeking confidential and trade secret information from non-party competitor). As the factual background described above demonstrates, the documents requested are not related to nor likely to assist Mesa Power in discovering information about its claims pending in NAFTA arbitration. The information contained therein would, however, provide a significant competitive advantage to Mesa Power over NextEra.

### III. The Deposition Subpoenas Should be Quashed.

Mesa Power has made no showing that it would even be able to subpoena seven executives of NextEra to be deposed under the NAFTA arbitration that this discovery request is supposedly intended to assist, or that the testimony taken would be considered by that arbitral panel. In that case, there is no basis upon which these depositions should proceed, now, before any tribunal has decided Mesa is entitled to and should obtain such discovery.

Moreover, there is no reason why seven executives should be deposed, even if certain limited depositions were appropriate. Certain of the executives are among the most senior executives at NextEra. (See Declaration of Michael O'Sullivan at ¶¶ 3-8 (Exhibit B)). Courts have recognized the potential for harassment and accordingly restrict senior executive depositions where discovery is available through less intrusive means. *See, e.g., Simon v. Pronational Ins. Co.*, No. 07-60757-CIV, 2007 WL 4893478, at *1 (S.D. Fla. Dec. 13, 2007)(granting motion for protective order to preclude CEO deposition); *see also Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982 at *15 (N.D. Cal. May 9, 2011)(granting protective order where proponent failed to demonstrate exhaustion of less intrusive discovery means than deposing CEO).

Armando Pimentel, Jr. is the current CEO of NextEra; he assumed the position in October 2011 and has no personal involvement in or knowledge of the topics identified in the subpoena. (O'Sullivan Decl. at ¶ 3). Mitchell Davidson is the former CEO and likewise has no personal knowledge of the topics. (O'Sullivan Decl. at ¶ 4). T.J. Tuscai is NextEra's Chief Operating Officer, but is not involved in the Canadian wind projects and similarly is without personal knowledge. (O'Sullivan Decl. at ¶ 5). Mark Sorenson is NextEra's Chief Financial Officer, similarly without personal knowledge of the subpoena topics. (O'Sullivan Decl. at ¶ 6). Neither Ross Groffman nor Louis Coakley are senior executives, but Coakley has no personal

knowledge of the topics. (O'Sullivan Decl. at ¶¶ 7,8). Each of the individuals identified in the subpoenae however has confidential information that should be protected against disclosure to a competitor. The subpoena should be quashed and no current or former NextEra employee should be deposed at this stage.

## CONCLUSION

The requests by Mesa Power are intrusive, burdensome, and not likely to assist in the underlying foreign proceeding. Accordingly, NextEra respectfully moves this Court for an Order quashing the subpoena issued to NextEra and its current and former employees in their entirety.

Dated: April 6, 2012

Respectfully Submitted,

By: _____
Stuart H. Singer (Fl. Bar No. 377325)
Lauren F. Louis (Fl. Bar. No. 039642)
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Tel. (954) 356-0011
Fax (954) 356-0022
ssinger@bsfllp.com
llouis@bsfllp.com

*Counsel for Defendants*

11

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 6, 2012 I filed the foregoing document with the Clerk of the Court and that the foregoing document is being served this day on all counsel of record identified below via Email and US mail:

Jose Astigarraga, Esq.
Edward M. Mullina, Esq.
Annette C. Escobar, Esq.
ASTIGARRAGA DAVIS
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Telephone: (305) 372-8282

*Attorneys for Mesa Power Group, LLC*

Lauren F. Louis

12